*176 OPINION OF THE COURT
Louis D. Laurino, S.
The Public Administrator, as administrator of the estate of Julio Ernesto Alban Holquin, has petitioned the court for permission to compromise a cause of action for the decedent’s wrongful death; to allow counsel fees; to direct distribution of the proceeds; to settle his account as administrator of the estate; to discharge him as fiduciary; and for other incidental relief.
The decedent’s widow, Piedad Holquin de Alban, as widow and as mother of the decedent’s infant son, Andres, has filed an answer objecting to the petition and account on the grounds that the Federal court has exclusive jurisdiction over the matter and that the matter has already been compromised and settled by order of the Federal court.
The decedent’s distributees, his widow and infant child, were and are residents and citizens of Colombia, South America. The Public Administrator qualified as administrator of the decedent’s estate and as such brought suits against various parties to recover for the decedent’s pain and suffering on behalf of the estate and for the decedent’s wrongful death on behalf of the distributees.
The result of these efforts has been an offer of settlement by the United States and Eastern Airlines, a proposed allowance for counsel fees and a proposed distribution of the assets.
On March 8, 1979, the Public Administrator filed his petition with this court to discontinue the cause of action for pain and suffering, to compromise the wrongful death action, and for other relief in connection with the proceeding.
On March 19, 1979, the widow, as a distributee and as the mother of the infant distributee, petitioned in the Federal court, Eastern District of New York, to be appointed guardian ad litem of the infant and to have the settlement approved, distribution directed and other relief. An order of compromise appointing the widow guardian ad litem, settling the matter and directing distribution of the proceeds and other relief was entered on April 6, 1979. The order was conditioned upon approval of the Surrogate’s Court as well.
 The primary objection raised by the respondent widow is the lack of jurisdiction of this court to determine the present application. Respondent contends that the exclusive jurisdiction of all proceedings embraced by the subject wrong *177 ful death action, including the compromise thereof, is in the Federal District Court by virtue of title 28 (§ 1346, subd [b]) of the United States Code. This section of the United States Code does provide for exclusive jurisdiction in the Federal court of "civil actions on claims against the United States, for money damages * * * [resulting from] death caused by the * * * [negligence of a government employee] * * * if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.” As can be seen from a plain reading of the statute, the condition precedent to the Federal court exercising its original and exclusive jurisdiction of a wrongful death action is that such action is decisionally or statutorily authorized by the State in which the Federal court is situated (cf. Moragne v States Mar. Lines, 398 US 375); and, moreover, the law of the State must be applied by the Federal court to determine the rights and liabilities of the parties to such an action (Hess v United States, 361 US 314).
In New York, the situs of the present cause of action, an action for wrongful death which was unknown at common law is a creature of statute (EPTL 5-4.1 et seq.) and accordingly a party commencing such action must strictly adhere to the requirements of the statute (Matter of Meng, 227 NY 264). The applicable New York statutes provide that an action for the wrongful death of a decedent who is survived by distributees vests in the decedent’s personal representative "duly appointed in this state or any other jurisdiction” (EPTL 5-4.1). Although the statute creates a property right out of an injury to the deceased person, and confers a beneficial interest in such property right upon the persons surviving the decedent who fall within the class of distributees of his estate, and despite the fact that the personal representative is a nominal party. (Winbush v City of Mount Vernon, 306 NY 327), the statute confers the right of action not upon the persons injured by decedent’s death but only upon his personal representative (Matter of Meng, supra) who is, therefore, a necessary party (Davis v New York Cent. & Hudson Riv. R. R. Co., 233 NY 242). The personal representative of the decedent is, accordingly, the real party in interest, and the cause of action can only be enforced by him (Mundt v Glokner, 24 App Div 110) as a statutory trustee for the beneficiaries (Edwards v Sullivan, 200 Misc 488).
Similarly, the statute provides that only the personal repre *178 sentative can petition for approval of a settlement and the compromise of an action for wrongful death, either in the court in which the action is pending or to the Surrogate’s Court that appointed him (EPTL 5-4.6; SCPA 2204; see discussion in Matter of Elder, 90 Misc 2d 460). Although it is not truly germane to the issues presented herein, it is worth noting that while trial courts of this State recognize their concurrent jurisdiction to compromise a cause of action for wrongful death and direct distribution, they rarely exercise this power on the grounds "that the Surrogate’s Court is peculiarly competent to deal with notices and hearings relative to apportionment and distribution of proceeds, the appointment, conduct and discharge of special guardians, and requirements of security, if any.” (Riley v Capital Airlines, 42 Misc 2d 194, 207.)
 Also, with respect to a final disposition of a wrongful death action, it is true that a party beneficially interested therein may by his own act release or otherwise extinguish his interest in the right of action (Matter of Finkelstein, 1 Misc 2d 1067, affd 6 AD2d 1055), but only the decedent’s personal representative, in his representative capacity and in the exercise of the authority and powers conferred on him by his appointment, can effectively extinguish a cause of action for wrongful death (Stuber v McEntee, 142 NY 200). Even where the sole beneficiary acting in his individual capacity executed a release in a wrongful death action, it has been held such release does not bar recovery for wrongful death by the personal representative who has the right to continue the suit once begun (Davis v New York Cent. & Hudson Riv. R. R. Co., 233 NY 242, supra).
Applying these general principles of law to the facts of the present case, it appears that the real party in interest, namely, the Public Administrator of Queens County, had as his option the right to seek approval of settlement either before the Federal court or the Surrogate’s Court which issued his letters (EPTL 5-4.6; Matter of Elder, supra). He has chosen this court and because of his choice of forum the objective relating to the lack of jurisdiction of this court must fall. Similarly, as the choice of forum is his alone, whatever proceedings were had in the Federal court on the petition of decedent’s widow are a nullity vis-á-vis the approval of the settlement, the distribution of proceeds and discharge of defendants (Stuber v McEntee, supra; Davis v New York Cent. & *179 Husdon Riv. R. R. Co., supra). The court recognizes the fact that it is entering a very delicate realm when it characterizes the order of another court of admittedly concurrent jurisdiction as a "nullity”. It does so, not in an attempt to jealously guard its own jurisdictional prerogative, but only so that a final disposition of the subject wrongful death action can be effectuated pursuant to applicable statutory and decisional law.
Accordingly, the petition of the Public Administrator is granted to the extent that the Public Administrator is authorized to compromise and settle the claim and cause of action for the decedent’s wrongful death against Eastern Airlines Eugene S. Eberhart, as administrator of the estate of W. S. Eberhart, and the United States of America for the sum of $725,000.
Based on the facts surrounding the death of the decedent, the Public Administrator is further authorized to allocate the entire sum of $725,000 to the wrongful death action and to discontinue the cause of action for the decedent’s pain and suffering with prejudice.
Counsel fees and disbursements are allowed in the amount of 25% of the recovery. This sum shall be chargeable with the sum of $7,200 which shall be paid to and accepted by the Public Administrator as his commissions. Said fee is also inclusive of any amounts payable to the so-called "Plaintiff’s Committee” and the fee of the guardian ad litem appointed by this court which shall be fixed and determined in the decree to be entered hereon.
The net proceeds shall be distributed to the decedent’s spouse and infant son in accordance with EPTL 5-4.4 and the formula outlined in Matter of Kaiser (198 Misc 582).
The Public Administrator is authorized to execute the appropriate releases and take such other steps as may be necessary to terminate the matter.
In her papers, the widow, as mother of the infant requests that the infant’s share be deposited in insured long-term, high-interest savings certificates in various New York banks. She further requests that while the principal shall remain on deposit until the infant reaches majority, she be given authority to withdraw the interest as credited by the banks "for the purpose of assisting in the support of her son”.
 It is absent from the papers whether the widow is *180 moving on behalf of the infant as natural mother in the sense that as surviving parent the laws or courts of Colombia have bestowed guardianship powers over the person and property of the infant, as is the case in some jurisdictions (cf. Matter of Perillo, 173 Misc 21, re Italy; Matter of Manville, 76 Misc 2d 419, re Germany; Matter of Papazoglou, NYLJ, July 11, 1973, P 14, col 7, re Greece) or the concept of natural guardian as found in the laws of New York (cf. SCPA 2220, payment of less than $1,000 to the father or mother of an infant; Domestic Relations Law, § 81; Matter of Goodchild, 160 Misc 738). In either case, the powers of the mother over the infant’s property are slight. As a foreign guardian, her authority does not extend beyond the jurisdiction in which she was appointed (Wuesthoff v Germania Life Ins. Co., 107 NY 580) and ás a natural guardian, she has no authority to perform any act in respect to the child’s property (Matter of Goodchild, supra, p 756).*
However, the court is certainly sympathetic to the wishes of the mother in regards to the infant’s property and where her wishes do not conflict with the best interests of the child, will give them weight.
In the present situation, the suggestion that the infant’s share of the proceeds be deposited in long-term, high-yield savings certificates in New York banks has a great deal of merit and is adopted by the court as are the bank depositories she requested. However, the court does not agree that the mother be allowed to collect the interest as it is paid without supervision. Rather, it would be in the best interests of the infant that the mother qualify as an ancillary guardian under SCPA 1716 and that the monies be deposited jointly with the Guardianship Clerk of the Surrogate’s Court.
In making this determination the court is well aware of the *181 fact that the pecuniary award to be received by the infant is in part for loss of support from the decedent during his minority and that in Matter of Papazoglou (supra), the court in considering this factor allowed payment of the interest yearly generated to the infant’s mother in Greece for the support of the infant. However, there were different factors involved in that matter such as the amount of the interest to be expected, the difficulties involved in making application to this court for support and the Greek law, among others. In the present situation, the mother has requested that the infant’s funds remain in New York. Any burden added by her filing an annual accounting or petitioning this court for support is far outweighed by the possible consequences of allowing her the unsupervised use of interest which at this point appears to be far in excess of the needs of a healthy six-year-old child.
Account settled.

 This court has appointed a guardian ad litem to protect the infant’s interests and complete jurisdiction. Even if the mother had qualified as general guardian or ancillary guardian in New York and appeared as such, it would be necessary under our law to appoint an independent guardian ad litem pursuant to SCPA 402 (subd 2) where a possible adversity or conflict of interest exists. In the settlement of a wrongful death action, the possibility of an adverse interest between the surviving spouse and the infant does exist since factors such as the possible abandonment of the decedent by the surviving spouse and the health of the child may affect the distribution of the proceeds. So, too, the adequacy of the settlement offer itself may be questionable. Where the possibility of such a conflict exists the Federal courts, too, normally appoint an independent guardian ad litem to protect the child’s interests (cf. Swift v Swift, 61 FRD 595).